IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:16-CV-11-D

| | |
|---|---|
| ELVERT D. HALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM** |
| ) | **AND RECOMMENDATION** |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Elvert D. Hall ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying his applications for a period of disability and disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") on the grounds that he is not disabled.[1] The case is before the court on the parties' motions for judgment on the pleadings. D.E. 21, 23. Both filed memoranda in support of their respective motions. D.E. 22, 24.[2] The motions were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* 16 Sept. 2016 Text Ord. For the reasons set forth below, it will be recommended that plaintiff's motion be allowed, the Commissioner's motion be denied, and this case be remanded.

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

[2] Plaintiff attached to his memorandum two exhibits (D.E. 22-1, 22-2) purportedly comprising copies of the credentials of the two orthopedic surgeons who have operated on plaintiff as shown on the website of the North Carolina Medical Board. Plaintiff made no attempt to show that these could properly be introduced at the district court level, including the existence of good cause for not submitting them in earlier proceedings. *See* 42 U.S.C. § 405(g). The court has therefore not considered them.

## BACKGROUND

I. **CASE HISTORY**

Plaintiff filed applications for DIB and SSI on 21 February 2012, alleging a disability onset date of 14 February 2012 in both. Transcript of Proceedings ("Tr.") 71. The applications were denied initially and upon reconsideration, and a request for a hearing was timely filed. Tr. 71. On 27 February 2014, a hearing was held before an administrative law judge ("ALJ"), at which plaintiff, represented by counsel, and a vocational expert testified. Tr. 86-120. The ALJ issued a decision denying plaintiff's claims on 30 April 2014. Tr. 71-80. Plaintiff timely requested review by the Appeals Council (Tr. 63) and subsequently submitted additional medical records to the Appeals Council for the first time for the periods 1 February 2014 to 15 April 2014 (Tr. 693-705); 30 July 2014 to 7 October 2015 (Tr. 15-62); and 4 June 2014 (64-67). On 2 December 2015, the Appeals Council admitted the additional medical records for dates prior to issuance of the ALJ's decision, 1 February 2014 to 15 April 2014 (Tr. 693-705), but did not admit the records postdating the decision (Tr. 15-62; 64-67) on the grounds that they did not relate to the period of alleged disability at issue. *See* Tr. 2, 5-6. Notwithstanding admission of the additional evidence, the Appeals Council denied the request for review. Tr. 1.

At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. On 20 January 2016, plaintiff commenced this proceeding for judicial review of the ALJ's decision, pursuant to 42 U.S.C. §§ 405(g) (DIB) and 1383(c)(3) (SSI). *See In Forma Pauperis* ("IFP") Mot. (D.E. 1); Order Allowing IFP Mot. (D.E. 6); Compl. (D.E. 7).

## II. STANDARDS FOR DISABILITY

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. § 1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the [R]egulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the [R]egulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.
>
> The first four steps create a series of hurdles for claimants to meet. If the ALJ finds that the claimant has been working (step one) or that the claimant's medical impairments do not meet the severity and duration requirements of the [R]egulations (step two), the process ends with a finding of "not disabled." At step three, the ALJ either finds that the claimant is disabled because her impairments match a listed impairment [*i.e.*, a listing in 20 C.F.R. pt. 404, subpt.

3

P, app. 1 ("the Listings")] or continues the analysis. The ALJ cannot deny benefits at this step.

If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ["RFC"], which is "the most" the claimant "can still do despite" physical and mental limitations that affect her ability to work. [20 C.F.R.] § 416.945(a)(1).[3] To make this assessment, the ALJ must "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," including those not labeled severe at step two. *Id.* § 416.945(a)(2).[4]

The ALJ then moves on to step four, where the ALJ can find the claimant not disabled because she is able to perform her past work. Or, if the exertion required for the claimant's past work exceeds her [RFC], the ALJ goes on to step five.

At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that "exists in significant numbers in the national economy," considering the claimant's [RFC], age, education, and work experience. *Id.* §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429.[5] The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations. If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits.

*Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).

### III. ALJ'S FINDINGS

Plaintiff was 46 years old on the alleged onset date of disability and 48 years old on the date of the hearing. *See, e.g.*, Tr. 79 ¶ 7. The ALJ found that plaintiff has at least a high school education (Tr. 79 ¶ 8) and past relevant work as a laborer, poultry plan production worker, and saw operator (Tr. 79 ¶ 6).

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the date

---

[3] *See also* 20 C.F.R. § 404.1545(a)(1).

[4] *See also* 20 C.F.R. § 404.1545(a)(2).

[5] *See also* 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1560(c)(2); 404.929.

of alleged onset of disability. Tr. 73 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: status post right heel fracture, degenerative disc disease, sural nerve neuritis, and depression. Tr. 73 ¶ 3. The heel fracture resulted from plaintiff's fall from a roof on the alleged disability onset date. *See, e.g.*, Tr. 76, 77. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the Listings. Tr. 73 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a limited range of light work:

> [T]he undersigned finds that the claimant has the residual functional capacity to perform a limited range of light work as defined by 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently and sit for six hours and stand/walk for two hours in an eight-hour workday, with normal break. The claimant cannot climb or crawl, but can occasionally crouch and kneel. The claimant cannot operate foot controls with his light lower extremity, and cannot be exposed to workplace hazards such as unprotected heights or dangerous, moving machinery. Further, the claimant is limited to simple, routine, repetitive tasks.

Tr. 75 ¶ 5.[6]

Based on his determination of plaintiff's RFC, the ALJ found at step four that plaintiff was unable to perform his past relevant work. Tr. 79 ¶ 6. At step five, the ALJ accepted the testimony of the vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of bench assembler, weight tester, and surveillance system monitor. Tr. 79-80 ¶ 10. The ALJ

---

[6] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "L-Light Work," 1991 WL 688702. "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. §§ 404.1567, 416.967.

accordingly concluded that plaintiff was not disabled from the date of the alleged onset of disability, 14 February 2012, through the date of the decision, 30 April 2014. Tr. 80 ¶ 11.

## STANDARD OF REVIEW

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id.*

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a

whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1-2.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff contends that this case should be remanded for a new hearing or, alternatively, that the ALJ's decision should be reversed and benefits allowed plaintiff on the grounds that the ALJ erred in failing (1) to find that plaintiff met or medically equaled Listing 1.02 for major dysfunction of a joint and Listing 1.03 for reconstructive surgery of a major weight-bearing joint; (2) to address the opinions of his first orthopedic surgeon, Andrew W. Simpson, M.D., and improperly evaluating the opinions of his second orthopedic surgeon, Albert W. Marr, M.D.; and, in the alternative, (3) to find that plaintiff is entitled to SSI benefits as of his fiftieth birthday pursuant to Medical-Vocational Rule 201.14. Because the court finds that the ALJ's handling of

the medical opinion evidence is dispositive of this appeal, it reaches only that contention on the merits.[7]

## ALJ'S HANDLING OF MEDICAL OPINION EVIDENCE

I. APPLICABLE LEGAL PRINCIPLES

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled. *See id.* §§ 404.1527(c), 416.927(c); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D.W. Va. 2009) ("Pursuant to 20 C.F.R. §§ 404.1527(b), 416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. R. 96-2p, 1996 WL 374188 (2 July 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In this circumstance, the Regulations prescribe factors to be considered in determining the weight to be ascribed, including the length

---

[7] While not reaching the issue of the propriety of the ALJ's listing determination, the court admonishes the Commissioner to ensure that the listing determination on remand is adequately explained in accordance with the principles set forth in this Memorandum and Recommendation.

and nature of the treating relationship, the supportability of the opinions, and their consistency with the record. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Ashmore v. Colvin*, No. 0:11-2865-TMC, 2013 WL 837643, at *2 (D.S.C. 6 Mar. 2013) ("In doing so [*i.e.*, giving less weight to the testimony of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.").

The same basic standards that govern evaluation of the opinions of treating medical sources and explanation of the weight given such opinions apply to nonexamining sources. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e); *Napier v. Astrue*, No. TJS-12-1096, 2013 WL 1856469, at *2 (D. Md. 1 May 2013). More weight is generally given to the opinion of a treating source than to the opinion of a nonexamining source. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Under appropriate circumstances, however, the opinions of a nonexamining source may be given more weight than those of a treating source. *See* Soc. Sec. R. 96–6p, 1996 WL 374180, at *3 (2 July 1996).

Opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See* 20 C.F.R. § 404.1527(d); Soc. Sec. R. 96-5p, 1996 WL 374183, at *2, 5 (2 July 1996). But these opinions must still be evaluated and accorded appropriate weight. *See* Soc. Sec. R. 96-5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner

must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.").

## II. DR. SIMPSON'S OPINIONS

Dr. Simpson treated plaintiff from 20 February 2012 to 27 June 2013. *See, e.g.,* Tr. 324-25, 342-48, 458-66. His treatment of plaintiff included surgery on plaintiff's ankle on 29 February 2012, namely, an open reduction internal fixation of the right calcaneus (*i.e.*, heel bone) on his right ankle. *See, e.g.,* Tr. 76 ¶ 5; 324-25. As noted, plaintiff had broken his ankle when he fell from a roof about two weeks earlier. Over the course of treatment, Dr. Simpson saw plaintiff nine times, in addition to performing the surgery on his ankle. *See, e.g.,* Tr. 324-25, 342-48, 458-66.

In the progress note on Dr. Simpson's final visit with plaintiff, again, on 27 June 2013, he stated the following opinions:

> Persistent pain, dysfunction, disability, 16 months status post a severely comminuted displaced intraarticular right calcaneus fracture. It is failing to respond to immobilization, bracing, activity modifications, and physical therapy. We discussed options. His quality of life is significantly deteriorating because of constant pain. I have recommended a referral to a foot and ankle specialist to consider subtalar fusion.

Tr. 467.

In his decision, the ALJ made no reference to these opinions. Plaintiff argues that his failure to do so was reversible error. The court agrees.

It is undisputed and the court finds that the statements by Dr. Simpson at issue constitute medical opinions under the Regulations. *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). The ALJ was therefore required to explain the weight he accorded them. His failure to do so was error. It precludes meaningful substantial-evidence review of the ALJ's decision. *See Monroe v.*

*Colvin*, 826 F.3d 176, 190-91 (4th Cir. 2016) (holding that the ALJ's explanation that he gave "limited weight" to medical opinions because "the objective evidence or the claimant's treatment history did not support" them and similarly cursory explanations of other opinions precluded meaningful substantial-evidence review (internal quotation marks omitted)) (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)).

Several factors tend to give potential weight to Dr. Simpson's opinions. These include, of course, his status as a physician who treated plaintiff. He is also a specialist in a field relating directly to plaintiff's ankle impairment—orthopedic surgeon. In addition, his treatment relationship with plaintiff when he rendered his opinions was an extended one, spanning almost a year and a half over which, as noted, he had seen plaintiff some ten times, including performance of surgery on plaintiff's ankle. Indeed, Dr. Simpson treated plaintiff continuously from within a week after the accident causing his ankle impairment until plaintiff came under the care of another orthopedic surgeon, Dr. Marr, based on Dr. Simpson's referral. Thus, at the time he rendered his opinions, Dr. Simpson was arguably the physician best able to evaluate plaintiff's ankle impairment from an orthopedic perspective. Ultimately, he was one of the two orthopedic surgeons who operated on plaintiff's ankle.

Although the Commissioner argues that the opinions expressed by Dr. Simpson are too vague to be of potentially significant probative value, the court disagrees. By noting plaintiff's "persistent pain" and the significant deterioration in his quality of life "because of constant pain," Dr. Simpson could be interpreted as endorsing plaintiff's allegations of severe, limiting pain with respect to his ankle. In contrast, the ALJ found plaintiff's subjective complaints "exaggerated." Tr. 78 ¶ 5. The ALJ's decision leaves unaddressed whether he accounted for Dr. Simpson's opinion on plaintiff's pain in making this finding and others. These other findings

include the ALJ's determination at step two of the sequential analysis that plaintiff did not suffer from the inability to ambulate effectively (which is defined in Listing 1.00B2b), a determination expressly underlying his finding that plaintiff did not meet or medically equal Listings 1.02 and implicitly supporting his comparable determination regarding Listing 1.03. Implicated as well, of course, is the ALJ's ultimate determination that plaintiff is not disabled.

Notable, in addition, is Dr. Simpson's opinion that plaintiff's ankle was failing to respond to treatment. This opinion finds support in the progressively more aggressive treatment plaintiff received—from the treatment Dr. Simpson referenced to epidural injections, surgical nerve decompression, and ultimately, after Dr. Marr took over plaintiff's orthopedic care from Dr. Simpson, subtaral arthrodesis (*i.e.*, fusion of the subtaral joint). This opinion also tends to substantiate the severity and limiting effect of plaintiff's ankle impairment as alleged. Again, the ALJ's decision leaves unclear whether the ALJ accounted for this opinion in his assessment of plaintiff's credibility, step two severity determination, and ultimate determination that plaintiff is not disabled and, if so, how.

The ALJ's failure to address Dr. Simpson's opinions comes against a backdrop in which he did discuss, but gave only little weight to, the opinions of Dr. Marr. Thus, the ALJ either did not address or gave only little weight to the opinions of the two orthopedists who treated plaintiff's ankle impairment (at least after the day of his fall). Moreover, as discussed below, the ALJ's assessment of Dr. Marr's opinions was itself flawed.

Further, there is other medical evidence, beyond Dr. Simpson's and Dr. Marr's opinions, tending to substantiate plaintiff's allegations of disabling limitations. For example, as the ALJ noted, the consultative examination of plaintiff by Rebekah H. Collymore, M.D. on 22 September 2012 found that he had moderate to severe difficulty in walking and could tandem

walk with noticeable difficulty. Tr. 76-77 ¶ 5 (referencing Tr. 369). The record is replete with evidence that plaintiff used a cane to walk, including his own testimony. *See, e.g.*, Tr. 93 (plaintiff's testimony); 95 (plaintiff's testimony); 443 (21 Jan. 2013); 447 (20 Feb. 2013); 452 (28 Mar. 2013); 477 (19 Nov. 2013); 481 (17 Dec. 2013); 484 (12 Aug. 2013). Dr. Collymore found that "the cane is medically required for ambulation" (Tr. 379), and Dr. Simpson stated in the progress note on his 27 June 2013 visit with plaintiff that "he has to ambulate with a cane" (Tr. 467). And, of course, there is the evidence of ineffectiveness of more conservative treatment for plaintiff's ankle.

Precluding as it does meaningful substantial-evidence review of his decision, the ALJ's failure to discuss Dr. Simpson's opinions requires remand. *See Monroe*, 826 F.3d at 190-91; *Boyd v. Colvin*, No. 9:13-CV-03189-DCN, 2015 WL 875422, at *3 (D.S.C. 2 Mar. 2015) (remanding case and noting that "because of the importance of treating physicians' opinions and the unequivocal law stating that the ALJ must weigh such opinions and provide good reasons for the weight given, the court is extremely hesitant to accept what is, at most, an implicit rejection of [the treating physician's] opinion"); *Mason v. Colvin*, No. 4:13-CV-93-D, 2014 WL 4162788, at *8 (E.D.N.C. 29 July 2014) ("[T]he court cannot overlook the 'importance of analyzing a treating physician's opinion.'" (quoting Ord. (D.E. 31), *Moreno v. Colvin*, No. 4:12–CV–143–D (6 Sept. 2013)), *rep. & recomm. adopted*, 2014 WL 4162818 (20 Aug. 2014)).

### III. DR. MARR'S OPINIONS

As noted, Dr. Marr took over orthopedic treatment of plaintiff's ankle from Dr. Simpson, beginning on 12 August 2013 and continuing to beyond the date of the ALJ's decision. *See, e.g.*, Tr. 28-30, 34-35, 42-44, 484-90, 586-87, 498-99, 502-03. He performed the surgical nerve decompression on plaintiff's ankle on 22 October 2013 (Tr. 586-87); recommended the subtalar

arthrodesis to plaintiff on 24 February 2014[8] (Tr. 699); and performed it on 28 August 2015 (Tr. 34-35). On 14 February 2014, after his first surgery on and five office visits with plaintiff, Dr. Marr issued a medical source statement. Tr. 675. The ALJ explained his assessment of the opinions expressed by Dr. Marr as follows:

> In February 2014, Dr. Marr opined the claimant could only stand for 30 minutes at a time, could not walk a block, would need to elevate his leg frequently, and suffered from moderate pain. (Exhibit 20F). This opinion has been taken into account but has been accorded little weight. The medical evidence does not support Dr. Marr's opinion. While Dr. Marr stated the claimant would need to frequently elevate his legs, medical records fail to reflect any findings regarding ankle swelling. (Exhibits 14F, 23F).

Tr. 78 ¶ 5.

Plaintiff argues that the ALJ erred in his assessment of Dr. Marr's opinions. Again, the court agrees. Although unlike with Dr. Simpson's opinions the ALJ does offer some explanation of the weight he accorded Dr. Marr's opinions, the explanation is so deficient as to preclude meaningful substantial-evidence review. *See Monroe*, 826 F.3d at 190-91.

One flaw in the ALJ's assessment is his apparent assumption that plaintiff was elevating his ankle simply to address swelling. Plaintiff testified, however, that he elevated his leg to relieve pain. Tr. 110. While in a disability report dated 3 May 2013 he identified reduction of swelling as one reason for the elevation, he identified reduction of pain as the other reason. Tr. 289 ("If I elevate my foot to reduce the pain and swelling . . . ."). As plaintiff argues, elevating his leg is a logical means of reducing ankle pain because it removes all weight from the ankle.

---

[8] The ALJ alludes to replacement of plaintiff's ankle on two occasions. *See* Tr. 77 ¶ 5 ("Medical records now indicate a right ankle joint replacement will be required."); 78 ¶ 5 ("The same [*i.e.*, retention of the capacity to work] is true after the ankle joint replacement surgery . . . ."). The medical records do not, in fact, appear to mention ankle replacement, which is a different procedure from arthrodesis. *See* Arthritis Foundation, Ankle Surgery: Bone Fusion vs. Joint Replacement, http://www.arthritis.org/living-with-arthritis/treatments/joint-surgery/types/other/bone-fusion-joint-replacement-surgery.php (last visited 23 Jan. 2017). It may be that by "ankle replacement" the ALJ meant "arthrodesis," although he did refer to arthrodesis expressly. *See, e.g.,* Tr. 77 ¶ 5 ("In February 2014, it was recommended a subtaral arthrodesis would be best."). It is not apparent what, if any, effect the ALJ's seemingly erroneous references had on his analysis. This is obviously a matter that should be rectified on remand.

Thus, the basis for the ALJ's rejection of Dr. Marr's opinion on plaintiff's need to elevate his leg is at best incomplete.

The other deficiency is the ALJ's failure to specify which medical evidence he deems fails to support Dr. Marr's opinions. The naked reference to the "medical evidence" is particularly inadequate under the circumstances presented here. These include Dr. Marr's unique status as one of two orthopedic surgeons who operated on plaintiff's ankle and the ALJ's failure to address Dr. Simpson's opinions. Dr. Simpson's opinions clearly tend to support Dr. Marr's opinions. The ALJ's decision leaves unaddressed whether and, if so, how he accounted for Dr. Simpson's opinions. The need for greater explanation by the ALJ of his assessment of Dr. Marr's opinions is also, of course, accentuated by the presence in the record of other medical evidence tending to substantiate plaintiff's allegations of disabling limitations.

By, again, precluding meaningful substantial-evidence review of his decision, the ALJ's failure to adequately explain the weight he gave Dr. Marr's opinions provides an independent ground for remand. *See Monroe*, 826 F.3d at 190-91; *see also Fox v. Colvin*, 632 F. App'x 750, 756 (4th Cir. 2015) (holding that explanation by ALJ that he gave "less weight" to medical opinions because they were "not well-supported by the medical record" was so "cursory and conclusory" as to preclude meaningful review and remanding case (internal quotation marks omitted)).

## CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion (D.E. 21) for judgment on the pleadings be ALLOWED, the Commissioner's motion (D.E. 23) for judgment on the pleadings be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

15
Case 7:16-cv-00011-D   Document 26   Filed 01/23/17   Page 15 of 17

In making this ruling, the court expresses no opinion on the weight that should be accorded any piece of evidence or the outcome of this case. These are matters that are for the Commissioner to resolve.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 6 February 2017 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after filing of the objections.

This 23rd day of January 2017.

James E. Gates
United States Magistrate Judge